1

**WILDE & ASSOCIATES**
Gregory L. Wilde, Esq.

2
Nevada Bar No. 004417

3
208 South Jones Boulevard
Las Vegas, Nevada 89107

4
Telephone: 702 258-8200
bk@wildelaw.com

5
Fax: 702 258-8787
and

6
MARK S. BOSCO, ESQ.

7
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.

8
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016

9
Telephone: (602) 255-6000

10
US Bank NA

11
09-74307

Electronically Filed on _____

12
## UNITED STATES BANKRUPTCY COURT

13
## DISTRICT OF NEVADA

14
In Re:                                                   BK-09-16329-lbr

15
John A. Gonzalez                              Date: 7/29/09

16
                                                           Time: 10:30am

17
                                                           Chapter 7
              Debtor.

18

19
### MOTION FOR RELIEF FROM AUTOMATIC STAY

20
US Bank NA, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), alleges as

21
follows:

22
    1.    That on or about April 24, 2009, the above named Debtors filed their current Chapter 13

23
Petition in Bankruptcy with the Court.

24
    2.    Secured Creditor is the current payee of a promissory note dated February 18, 2005 in

25
the principal sum of $250,000.00 ("Promissory Note" herein), secured by a Real Property Trust Deed

26
of same date ("Trust Deed" herein) upon property generally described as 7559 Aurora Glow St., Las

Vegas, NV 89139, and legally described as follows:

Lot two hundred sixty two (262) in Block A, of TORREY PINES NORTHEAST UNIT 2 as shown by Map thereof on file in Book 100 of Plats. page 86 in the office of the County Recorder of Clark County, Nevada.

("subject property" herein).

3.    Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject property is currently vested in the name of Debtor and that the Debtor is in default of the loan obligations.

4.    Movant is informed and believes and therefore alleges that the Debtors and the bankruptcy estate have no equity in the property.  Pursuant to Debtors statement of intentions the debtor intends on surrendering his interest in the subject property.  A true and correct copy of the Debtor's Statement of Intention is attached hereto as Exhibit "A".

5.    Movant is informed and believes and therefore alleges that the Debtor and bankruptcy estate have insufficient equity in the property.   The fair market value of the property pursuant to Debtor's Schedule "A" is $225,000.00, less ten percent (10%) cost of marketing, less the first and second secured liens resulting in insufficient equity.  Therefore, secured creditor is not adequately protected.  A true and correct copy of the Debtor's Schedule "A" is attached hereto as Exhibit "B".

6.    Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

7.    Secured Creditor has incurred to date attorney's fees of approximately $750.00.

8.    Secured Creditor urges that this Court issue and Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

9.    Secured Creditor's Information Sheet as to the extent of liens and encumbrances against the subject property is attached hereto as Exhibit "C" and incorporated herein by reference. Secured Creditor will seek leave of Court to specify any further encumbrances against the subject property at the time of hearing.

10. Timothy S. Cory has been appointed by this Court the Chapter 13 Trustee in this instant

Bankruptcy proceeding. By virtue of the position as Trustee of the estate of Debtor herein, Debtor

holds title to the subject property in that capacity. To the extent the relief sought herein is granted,

Respondent, Timothy S. Cory, Trustee, is bound any such judgment.

11. This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section

362(d).

12. Secured Creditor asserts that a foreclosure proceeding has not been initiated concerning

the subject property. As a result, Secured Creditor asks the Court to waive the requirement of notifying

other lienholders as detailed in Local Rule 4001 (a)(1). Such lienholders will be notified of a

foreclosure proceeding if and when one is initiated.

WHEREFORE, Secured Creditor prays judgment as follows:

(1) For an order granting relief from the Automatic Stay, and permitting this Secured

Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to

sell the subject property at a Foreclosure Sale under the items of said Trust Deed including necessary

action to obtain possession of the Property.

(2) For a finding that the Rules 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not

applicable and Secured Creditor may immediately enforce and implement the order for relief from the

automatic stay.

(3) In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations

due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor

with the remedies to proceed with foreclosure should the Debtor not maintain payments.

///

///

///

///

///

(4)    For attorneys' fees and costs of suit incurred herein.

(5)    For such other and further relief as this Court deems appropriate.

DATED _____ 7/1/09 _____.

**WILDE & ASSOCIATES**

By _____ #10235 _____

**GREGORY L. WILDE, ESQ.**
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107



**National Default Servicing Corporation**
2525 E. Camelback Road, Suite 200
Phoenix, Arizona 85016
Phone (602) 264-6101
Fax (602) 264-6209

June 24, 2009

Tiffany and Bosco
2525 E. Camelback Road, 3rd Floor
Camelback Esplanade II
Phoenix, AZ 85016-4237

| RE: | NDSC No. | : | 09-91340-US-NV |
|-----|----------|---|----------------|
| | Loan No. | : | 6003192375 |
| | Inv./Agency | : | FHLMC 10588131 |
| | Borrower | : | GONZALEZ |
| | Prop. Address | : | 7559 AURORA GLOW ST |
| | | | LAS VEGAS, NV 89139 |

Dear Tiffany and Bosco,

*National Default Servicing Corporation* hereby requests your firm to initiate the appropriate bankruptcy action for the above referenced file on behalf of our client, U.S. Bank Home Mortgage. All pleadings should be filed in the name of **U.S. Bank, N.A., it's Successors and/or Assigns, 4801 Frederica Street, Owensboro, KY 42301** (please contact our office for instructions on FHLMC loans). Therefore, please proceed with the following action as outlined below. **You are being retained as local bankruptcy counsel due to your expertise in the handling of these types of matters. We are expecting you to audit and fully analyze each referral to determine the best course of action based upon the facts of the case and the peculiarities of your jurisdiction. After auditing and analyzing this file, if you feel that any additional steps other than those already requested herein should be taken to protect the client's interest, please contact us immediately to discuss those additional steps and to obtain prior written approval to proceed with the same.**

| ☑ | **Motion for Relief** | ☐ | **File POC & Plan Review** |
|---|---|---|---|
| ☐ | **File an Objection to the Plan** | ☐ | **Attend Creditor's Meeting** |
| ☐ | **Other** | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Chapter | : | | | Date Filed | : | 04/24/09 |
| Case No. | : | 09-16329 | | Court | : | District of Nevada - Las Vegas |
| Debtor Attorney | : | SAM BENEVENTO | | Trustee | : | Timothy S. Cory |
| Meeting of Creditors | : | | | Confirm. Hearing | : | |
| POC Deadline | : | | | | | |

On all Proof of Claim referrals, please obtain and review the debtor's chapter 13 bankruptcy plan. Please advise this office immediately if an Objection to the Plan is necessary.

09-91340-US-NV
6003192375
GONZALEZ

If the requested action is a Motion for Relief from Stay, your office has the authority to enter into an Agreed Order under the following parameters:

1. Loan must be less than five (5) months post-petition delinquent,
2. Six (6) month cure of post-petition arrearage with no more than one (1) month notice of default,
3. Regular monthly payments remain current, and
4. As well as any and all other normal and customary terms and conditions used in your jurisdiction to protect the client.

**It should be noted that if an amended POC is required per the terms of the Order, please amend the POC and forward a file-stamped copy to our office. If the proposed Order exceeds these terms, you must contact this office for approval.**

<u>On ALL FNMA Loans,</u> the lenders must now advise all debtors' counsel that loss mitigation options may be available. Please include this verbiage in any and all correspondence to the borrower and/or their attorney.

We request that you keep this office apprised as to the progress of the case and notify this office immediately (within 24 hours) in the event of a dismissal, discharge, or successful relief action. All correspondence must be directed to NDSC at the above-referenced address. Please submit all invoices via NewInvoice to U. S. Bank Home Mortgage. Please do not call or send documents to U.S. Bank Home Mortgage.

**Our office requires that all motions and/or proofs of claim be filed within 30 days of the referral date, and objections/responses are to be filed within 7-10 days from the referral date.**

Please acknowledge your receipt and acceptance of this request where indicated below and forward to NDSC within forty-eight (48) hours of receipt. We also ask that you provide a contact name, phone number and e-mail address for the person processing this case within your office.

If you have any questions, please contact me at . Thank you for your assistance with this matter.

Sincerely,

National Default Servicing Corporation

Justin White
Bankruptcy Processor

enclosure

2

U.S. Bank Home Mortgage
4801 Frederica Street
Owensboro, KY  42301

June 16, 2009

ndsc
attn lisa rogers

Re:  Loan Number:    6003192375
     Mortgagor:      John A Gonzalez
     Case Number:    09-16329
     Chapter Filed:  07
     Date Filed:     April 24, 2009
     Investor:       Federal Home Loan Mtg Cor

The above mortgagor is being referred to you to file a Motion for
Relief___/___ Proof of Claim_____.  Please add your fees and
costs if appropriate.

Also included are the following:

___/___Copy of Note                ___/___Copy of Mortgage
___/___Copy of Assignments         ___/___PAY4 Screen
___/___Bankruptcy Notice           ___/___BNKC Screen
_____Other                       _____Breakdown of Arrears


Additional information is as follows:

Contractual Due Date:              09-01-08
Principal Balance:                 238,842.10
Interest Rate:                       6.12500
Per Diem:                             40.08


The attorney that should attend the 341 Hearing is NAT'L DEFAUT SERVICING


Please send copies of all correspondence to my attention.  If questions
or delays should arise please call me at 800-449-2051           .


Thank You,

Jennie Stevenson
Bankruptcy Department
Bankruptcy Processor

```
BNKA  00050285                                                MAN B
JA GONZALEZ  DUE 09/01/08  PMT   1,732.80  TYPE CONV. RES.
7559 AURORA GLOW ST        LAS VEGAS NV 89139              GROUP B
-DEBT--------------------* POST-PETITION PAYMENTS *--------------PRO DRT------
RECEIVED  PP PMTS EFF DATE 1098   CHECK DATE / NUMBER    L/C ADJ  CNT REASON
      .00  00   MM/DD/YY        MM/DD/YY                      .00  0    _
PMTS   PMT AMT    L/C PD     SUSPENSE  NSF PD     ESCROW   ADTL PRIN   OVR
 1    1732.80       .00         .00     .00        .00        .00    1


PLAN 1:  AMOUNT   DUE DATE    PLAN 2:  AMOUNT   DUE DATE
            .00   MM/DD/YY               .00   MM/DD/YY    PMT  1 OF  0
-------------------* PRESS PF2 FOR ADDITIONAL MESSAGES *---------------------
POST-PETITION PAST DUE 289 DAYS       REMOVED LOSS MITIGATION
SUSPENDED FORECLOSURE            CH 7
PROC STOP = H  SEE BANKRUPTCY      LATE CHARGE ACCRUAL STOP = 8
-SUSP-----------------------------------------------* POST-PETITION *------
TRUSTEE SUSP:          .00              DUE DATE  PAYMENT  LATE CHG
                                       09-01-08  1732.80    75.95
DEBTOR SUSP:           .00   00  PP-PMTS
   POST 1 DUE:               PMT
   POST 2 DUE:               PMT
LATE CHARGES DUE:    303.80   NSF FEES DUE:      .00
MSP SUSPENSE:          .00   GRACE DAYS:    PROCESSOR: GILLASPIE, CARLA
```

Case 09-16320-lbr   Doc 18   Entered 07/01/09 16:15:06   Page 9 of 35

JA GONZALEZ   1ST PMT 04/01/05   INV A85/006   TYPE CONV. RES.          MAN B
BH GONZALEZ   CUR PMT 09/01/08   PB     238,842.10    IR   6.12500       GRP ZBL
------------------------* HISTORY OF PAYMENTS *-------------------------------

| PMT DT | 09/01/08 | 12/01/08 | 12/01/09 |
|--------|----------|----------|----------|
| IR | 6.12500 | 6.12500 | 6.12500 |
| P&I | 1,519.03 | 1,519.03 | 1,519.03 |
| COUNTY | 162.02 | 174.98 | 174.98 |
| CITY | 0.00 | 0.00 | 0.00 |
| HAZARD | 51.75 | 63.82 | 63.82 |
| MI | 0.00 | 0.00 | 0.00 |
| LIEN | 0.00 | 0.00 | 0.00 |
| OS | 0.00 | 35.01 | 0.00 |
| MISC | 0.00 | 0.00 | 0.00 |
| BSC | 0.00 | 0.00 | 0.00 |
| A&H | 0.00 | 0.00 | 0.00 |
| LIFE | 0.00 | 0.00 | 0.00 |
| REPL | 0.00 | 0.00 | 0.00 |
| HUD | 0.00 | 0.00 | 0.00 |
| 2 P&I | 0.00 | 0.00 | 0.00 |
| NET | 1,732.80 | 1,792.84 | 1,757.83 |
| PAYMNT | | | |
| CHANGE | | | |
| REASON | | | |

```
JA GONZALEZ MAN B INV A85/006/100588131   TYPE CONV. RES                        FC 0
DUE 09-01-08  CURRENT: P&I     1,519.03   ESC.       213.77   INT.  6.12500
----------------- MOST RECENT QUOTE ------ PRIOR QUOTE ----------DATA AMOUNTS-
DATE OF QUOTE                06-17-09                     TAX ADV       524.95
REINSTATE ON                 07-01-09                     HAZ ADV       665.00
   NEXT DUE DATE WILL BE     08-01-09                     MIP
PAYMENTS DUE                       11                     F/C EXP.
TOTAL PAYMENT AMOUNT        19,541.12                     TOTAL       1,189.95
CLOSING INT/DSI                   .00                     ATTY ADV
ACCRUED LT CHG    ( I )        303.80   (   )             MSP SUSP          .00
LT CHG FORECASTED ( I )           .00   (   )              TRUSTEE          .00
BAD CHECK         ( I )           .00   (   )              DEBTOR           .00
RESTRICTED ESCROW ( I )           .00   (   )
NET OTHER FEES    ( I )         80.00   (   )
                                                         MTGR RC        100.00
SUSPENSE          ( I )           .00   (   )             ADV BAL      1,199.43
                                                         INV ADV
MTGR REC CORP ADV ( I )        100.00   (   )
** TOTAL DUE                20,024.92                     TOTAL        1,199.43
PENDING P&I                             ARM PENDING P&I
PENDING ESC.     273.81  12-01-08       BUYDOWN PENDING

ACTIVE BANKRUPTCY                       LAST UPDATED BY ZBL 06/17/09  17:24
```

```
13   CONV. RES.        PER/CLS/OFF  B/YY/53 AGE:  4Y  4M IR:  6.12500 INV: A85
DUE( 10)    17,748.28  DUE 09/01/08( 8)(08/06)  ASSUM:        ACQ:03/02/05
LATE CHRG    303.80  PAYMT    @   1,732.80 P: 7559 AURORA GLOW ST
BAD CK FEES     .00  L/C AMT        75.95    LAS VEGAS NV 89139
OTHER FEES    60.00  PAYMT + LC   1,808.75 M:
TOT DUE   18,112.08* PRIN BAL    238,842.10
SUSPENSE       .00  P&I          1,519.03    1411 FOOTHILLS MILLS
NET DUE   18,112.08  DLQ  4 TIME,PAY  3 DAY     HENDERSON NV 89012
C/S 118    JOHN A GONZALEZ                      702-597-9951
C/D 06/09 BRENDA H GONZALEZ          B  MTGR WORK      702-304-6623


------------------------ * ADDITIONAL MESSAGES * ----------------WU: P ----
ACTIVE CH 7 BANKRUPTCY            CASHIER STOP 4
REMOVED LOSS MITIGATION          SUSPENDED FORECLOSURE
-----MORT----------------------* MORTGAGOR *--------------------------------
MORTGAGOR: JOHN A GONZALEZ            SSN/TIN: 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    CII: A
  CO-MTGR: BRENDA H GONZALEZ          SSN/TIN: 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    CII:
    PHONE: (702)597-9951  (702)304-6623B  ASM DATE: 00/00/00
  PAY HIST: 211211111211              ACQ DATE: 03/02/05
  DELQ TAB: 000000001111     TRNFR DEED DATE: 00/00/00  OCC STATUS: 3
ORIG MTGR:                            CBR: CODE 4 STAT 84  COMP:
```

**3270 Explorer**

## U.S. BANK HOME MORTGAGE -- 515

Loan Number: 6003192375                                      Borrower Name:  GONZALEZ,JOHN A

```
PAY4 6003192375    AS-OF 04/24/09  PAYOFF CALCULATION TOTALS 06/15/09  12:10:36
NAME JA GONZALEZ CONTACT NAME JOHN A GONZALEZ
------------------------------------------------------------------------
PRINCIPAL BALANCE       238,842.10     ---------- RATE CHANGES ----------
INTEREST 04/24/09        10,674.55  CALC  INT FROM    RATE       AMOUNT
PRO RATA MIP/PMI              .00        08/01/08   6.12500    10,674.55
ESCROW ADVANCE          1,199.43        04/24/09
ESCROW BALANCE               .00
SUSPENSE BALANCE             .00
HUD BALANCE                  .00
REPLACEMENT RESERVE          .00
RESTRICTED ESCROW            .00
TOTAL-FEES                 17.00  W 1
ACCUM LATE CHARGES        303.80
ACCUM NSF CHARGES            .00
OTHER FEES DUE             60.00
PENALTY INTEREST             .00
FLAT/OTHER PENALTY FEE       .00     TOTAL INTEREST          10,674.55
CR LIFE/ORIG FEE RBATE       .00     TOTAL TO PAYOFF        251,196.88
RECOVERABLE BALANCE       100.00  NUMBER OF COPIES: 1   PRESS PF1 TO PRINT
------------------------------------------------------------------------

------------------------------------------------------------------------
```

```
BANKRUPTCY PROOF OF CLAIM   (PRE-PETITION)                    06/16/09  12:10:44

BANKRUPTCY CASE NUMBER: 09-16329                CHAPTER: 07
         FILING DATE: 04/24/09
         LOAN NUMBER: 6003192375    MTGR SSN: 568531045 CO-MTGR SSN: 61418268
2
         LOAN TYPE: CONV RES

ATTORNEY:  NATIONAL DEFAULT          COURT:    U.S.BANKRUPTCY COURT
           TITLE SERVICES                      OFFICE OF THE CLERK
           FILE NUMBER 50124                   333 LAS VEGAS BLVD. S.
           LOS ANGELES          CA
           90074
                                               LAS VEGAS
                                               NV  89101




MORTGAGOR  JOHN A GONZALEZ          TRUSTEE:  TIMOTHY S. CORY
           BRENDA H GONZALEZ
           1411 FOOTHILLS MILLS               8831 WEST SAHARA AVE
           HENDERSON          NV
           89139
                                               LAS VEGAS
                                               NV  89117

PROPERTY ADDRESS:    7559    AURORA GLOW ST  LAS VEGAS          NV 89139

CLAIMED   ACKNOWLEDGED  CONFIRMED    CLAIM TOTAL  CONFIRMED TOTAL  PRIN BALANCE
06/05/09                                     .00              .00    238,842.10

--------------- PAYMENTS -------------------- -------- LATE CHARGES -------
DUE DATE THRU  DUE DATE     AMOUNT      TOTAL  NUM  AMOUNT              TOTAL

PAYMENT TOTALS:            -              .00  000                       .00

------------------------------- FEES ----------------------------------

FEE TYPE  FEE DESCRIPTION      CLAIMED     CONFIRMED  AMOUNT PAID

FEE TOTALS:                       .00          .00       .00
```

20050218-0001916

PIN #:176-12-211-112
After Recording Return To:
MOUNTAIN STATES MORTGAGE
CENTERS INC.
1333 E. 9400 S.
SANDY, 84093

Grantee:
MOUNTAIN STATES MORTGAGE
CENTERS INC.
1333 E. 9400 S.
SANDY, UT 84093

Mail Tax Statement To:
MOUNTAIN STATES MORTGAGE

1333 E 9400 S
SANDY UT 84093

i 30 50 185-TG

Fee: $29.00
WC Fee  $0.00

02/18/2005          13:59 21
T20050031541
Requestor:
LAND TITLE OF NEVADA

Frances Deane          DXU
Clark County Recorder   Pgs 16

---

[Space Above This Line For Recording Data]

GONZALEZ
LOAN #: 05020038

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated
together with all Riders to this document.
(B) "Borrower" is   JOHN A. GONZALEZ AND BRENDA H. GONZALEZ,
HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

. Borrower is the trustor under this Security Instrument.

(C) "Lender" is   MOUNTAIN STATES MORTGAGE CENTERS, INC.

Lender is a   MORTGAGE BANKER                    organized and existing under the laws of
UTAH                          . Lender's address is   1333 E. 9400 S.,
SANDY, 84093
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is   LAND TITLE OF NV, INC.
(E) "Note" means the promissory note signed by Borrower and dated
The Note states that Borrower owes Lender
TWO HUNDRED FIFTY THOUSAND AND 00/100
Dollars (U.S. $  250,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   MARCH 1, 2035                .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☒ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Other(s) [specify]

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCUHN71                         (Page 1 of 12 pages)
DOCUHN71.VTX 4/25/2001

05020038

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **CLARK**
(Type of Recording Jurisdiction)          (Name of Recording Jurisdiction)
**LOT TWO HUNDRED SIXTY TWO (262) IN BLOCK A, OF TORREY PINES NORTHEAST-UNIT 2 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 100 OF PLATS, PAGE 86 IN THE OFFICE OF THE COUNTY RECORDER OR CLARK COUNTY, NEVADA.**

05020038

which currently has the address of    7559 AURORA GLOW STREET

[Street]

LAS VEGAS        , Nevada   89139                ("Property Address").
            [City]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCUINV3                                 (Page 3 of 12 pages)
DOCUINV3.VTX 6/25/2003

05020038

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c)

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01
DOCUSN4                                        *(Page 4 of 12 pages)*
DOCU5N4.VTX 6/25/2003

05020038

secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1:01
DOCUKN5                                                  (Page 5 of 12 pages)
DOCUKV5.VTX 4/25/2003

05020038

the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCUKN96
DOCUKN96.VTX  6/25/2003                      (Page 6 of 12 pages)

05020038

Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

05020038

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCUISNV                                                (Page 8 of 12 pages)
DOCUISV8.VTX  6/25/2003

05020038

Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument;

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3029 1/01
DOCUNV9                                                      *(Page 9 of 12 pages)*
DOCU8V29.VTX 4/25/2003

05020038

(b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3029 1/01
DOCUKNV10                                    (Page 10 of 12 pages)
DOCUKNVA.VTX 6/25/2003

05020038

Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees: (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S.

S

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCUSNV11                                                      *(Page 11 of 12 pages)*
DOCUNV1.VTX 4/25/2003

[Space Below This Line For Acknowledgment]

STATE OF Nevada
COUNTY OF Clark

This instrument was acknowledged before me on 2/14/05
by John A. Gonzalez and Brenda H Gonzalez



NOTARY PUBLIC
County of Clark-State of Nevada
TRISH GLADD
No. 99-54766-1
My Appointment Expires April 16, 2007

_Trish Gladd_
Notary Public

_Notary Public_
Title (and Rank)

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3029 1/01
DOCU1NV12                                    (Page 12 of 12 pages)
DOCU1NVC.VTX  4/24/2001

05020038

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 2/14/05

- BORROWER - JOHN A. GONZALEZ - DATE -

_____ 2/14/05

- BORROWER - BRENDA H. GONZALEZ - DATE -

13050185-TG

# EXHIBIT "A"
### Legal Description

LOT TWO HUNDRED SIXTY TWO (262) IN BLOCK A, OF TORREY PINES NORTHEAST-UNIT 2 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 100 OF PLATS, PAGE 86 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**APN:** 176-12-211-112

# PLANNED UNIT DEVELOPMENT RIDER

GONZALEZ
LOAN #: 05020038

THIS PLANNED UNIT DEVELOPMENT RIDER is made this          day of                          .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to  MOUNTAIN STATES MORTGAGE CENTERS INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
7559 AURORA GLOW STREET, LAS VEGAS, NV 89139

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in:
THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF
RECORD THAT AFFECT THE PROPERTY.

(the "Declaration"). The Property is a part of a planned unit development known as:
TORREY PINES

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest.
PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii)
articles of incorporation, trust instrument or any equivalent document which creates the
Owners Association; and (iii) any by-laws or other rules or regulations of the Owners
Association. Borrower shall promptly pay, when due, all dues and assessments imposed
pursuant to the Constituent Documents.

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01
DOCU3PA1
DOCU3PA1.VTX  11/16/2004                        (page 1 of 3 pages)

05020038

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

05020038

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

\- BORROWER - JOHN A. GONZALEZ - DATE -

\- BORROWER - BRENDA H. GONZALEZ - DATE -

**MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3150 1/01
DOCU3783
DOCUPAD.VTX  11/16/2004                                    *(page 3 of 3 pages)*

20051214-0001236

Fee: $14.00
N/C Fee: $0.00

12/14/2005          09:52:30
T20050225818
Requestor:
    MOUNTAIN STATES MORTGAGE CENTERS

Frances Deane          DSJ
Clark County Recorder   Pgs: 1

**When Recorded Mail To:**
MOUNTAIN STATES MORTGAGE CENTERS
1333 EAST 9400 SOUTH
SANDY, UT 84093
ATTN: FINAL DOCC

Loan No. 5020036
MIN 1000212 6003192375-1
MERS 1-888-679-6377
Assessor's Parcel No.: 176-12-211-112
----------------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE----------------------------

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
    **Mortgage Electronic Registration Systems, Inc., its successors
and assigns P.O. Box 2026, Flint, Michigan, 48501-2026**
all beneficial interest under that certain Deed of Trust dated FEBRUARY 14, 2005 executed by
JOHN A. GONZALEZ AND BRENDA H. GONZALEZ, HUSBAND AND WIFE AS COMMUNITY
PROPERTY WITH RIGHT OF SURVIVORSHIP Trustee recorded on FEBRUARY 18, 2005,
in Book Volume No. 20050218 page(s) N/A as Document No. 01916, CLARK County
Records, State of NEVADA real estate legally described as follows:

LOT TWO HUNDRED SIXTY TWO (262) IN BLOCK A, OF TORREY PINES NORTHEAST
UNIT 2 AS SHOWN BY MAP THEREOF ON FILE IN BOOK 100 OF PLATS, PAGE 86 IN
THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

    TOGETHER with the note or notes therein described or referred to, the money due and
to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

DATED: SEPTEMBER 26, 2005          MOUNTAIN STATES MORTGAGE CENTERS, INC.

                                   KETURAH VARANAKIS, VICE PRESIDENT

STATE OF UTAH                       )
COUNTY OF SALT LAKE                 )    ss:
                                    )

On SEPTEMBER 26, 2005   , before me, the undersigned, a Notary Public in and for the said
County and State, personally appeared KETURAH VARANAKIS to me personally known, who,
being duly sworn by me, did say that he/she/they is/are the VICE PRESIDENT of the
corporation named herein which executed the within instrument, that the seal affixed to said
instrument is the corporate seal of said corporation; that said instrument was signed and sealed
on behalf of said corporation pursuant to its by-laws or a resolution of its Board of Directors and
that he/she acknowledges said instrument to be the free act and deed of said corporation

DOMINIQUE ST CLAIR
NOTARY PUBLIC • STATE of UTAH
1333 E 9400 S
SANDY UT 84093
MY COMMISSION EXPIRES: 07-20-2009

Notary Public for the State of Utah
My commission expires: 07/20/09

B8 (Form 8) (12/08)

# United States Bankruptcy Court
## District of Nevada

In re   John A. Gonzalez

                                   Debtor(s)

Case No.

Chapter    7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** - Debts secured by property of the estate. (Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)

---

Property No. 1

| **Creditor's Name:**<br>GMAC | **Describe Property Securing Debt:**<br>2007 Chevy Tahoe |
|---|---|

Property will be (check one):
- ☐ Surrendered                     ■ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ■ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ■ Claimed as Exempt           ☐ Not claimed as exempt

---

Property No. 2

| **Creditor's Name:**<br>US BK HM MTG | **Describe Property Securing Debt:**<br>7559 Aurora Glow Street<br>Las Vegas, Nevada 89139<br>(Surrender / Foreclosed) |
|---|---|

Property will be (check one):
- ■ Surrendered                     ☐ Retained

If retaining the property, I intend to (check at least one):
- ☐ Redeem the property
- ☐ Reaffirm the debt
- ☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
- ☐ Claimed as Exempt           ■ Not claimed as exempt

---

EXHIBIT A

B8 (Form 8) (12/08)                                                                                      Page 2

| Property No. 3 | |
|---|---|
| **Creditor's Name:**<br>WELLS FARGO | **Describe Property Securing Debt:**<br>7559 Aurora Glow Street<br>Las Vegas, Nevada 89139<br>(Surrender / Foreclosed) |

Property will be (check one):
■ Surrendered                    ☐ Retained

If retaining the property, I intend to (check at least one):
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is (check one):
☐ Claimed as Exempt                    ■ Not claimed as exempt

**PART B -** Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>-NONE- | **Describe Leased Property:** | Lease will be Assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ YES        ☐ NO |

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

B6A (Official Form 6A) (12/07)

In re    John A. Gonzalez                                      Case No. _____
                                              ,
                        Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 7559 Aurora Glow Street<br>Las Vegas, Nevada 89139<br>(Surrender / Foreclosed) | Residence | - | 225,000.00 | 291,592.00 |

| | | |
|---|---|---|
| Sub-Total > | 225,000.00 | (Total of this page) |
| Total > | 225,000.00 | |
| | (Report also on Summary of Schedules) | |

__0__  continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy


EXHIBIT B

## ** SECTION 362 INFORMATION SHEET **

John Gonzalez                              Chapter 13
DEBTOR(S)                              Case No.: 09-16329-lbr

US Bank NA
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 7559 Aurora Glow St., Las Vegas NV 89139

NOTICE SERVED ON: Debtor(s) _____ x _____; Debtor (s) Counsel _____ x _____; Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st US Bank NA (PB \$238,842.10) | 1st _____ |
| 2nd WELLS FARGO (PB \$52,750.00) | 2nd _____ |
| Total Encumbrances: \$291,592.10 | Total Encumbrances: \$_____ |
| APPRAISAL or OPINION as to VALUE: "Per attached Schedule "A" \$225,000.00 | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: \$250,000.00 Interest Rate: 6.125 Duration: 30 Year Payment Per Month: \$ 1,732.80 SPECIAL CIRCUMSTANCES: **I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action.** | |
| | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: _____ | SUBMITTED BY: _____ |
| SIGNATURE: _____ | SIGNATURE: _____ |

EXHIBIT